## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **FREDERICK D. GREEN** | § | |
| | § | |
| **Plaintiff** | § | **CIVIL ACTION NO. 2:05-CV-435** |
| | § | |
| **V.** | § | |
| | § | |
| **THE KANSAS CITY SOUTHERN** | § | |
| **RAILWAY COMPANY** | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. No. 43),  Defendant

KCS's Motion for Partial Summary Judgment (Doc. No. 45), Defendant KCS's Second Motion for

Partial Summary Judgment (Doc. No. 71), and the parties' responses and replies.  After careful

consideration, the Court finds Plaintiff's motion should be GRANTED in part and DENIED in part,

and Defendant's motions should be GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff Frederick D. Green ("Green") was employed as a conductor, under the terms of a

collective bargaining agreement ("CBA"), at The Kansas City Southern Railway Company ("KCS").

In November 2004, KCS ordered Green to move from his conductor position into an engineering

training class as allowed by the CBA.  As part of his training, KCS sent Green to Dr. William J. Till

("Dr. Till") for a hearing test on November 8, 2004.  Dr. Till noticed an impaction of ear wax and,

before performing the hearing test, attempted to clean the wax from Green's ear.  During the process,

Green experienced sharp pain and felt light-headed.  That night, Green's ear began draining blood.

The next day, upon being notified of Green's pain and drainage, KCS sent Green back to Dr. Till.

Dr. Till informed Green that his ear was "just a little irritated" and prescribed medication.  Later that

same day, Green saw two additional doctors who told him his left eardrum was ruptured.  Green returned to the engineer trainee class, but approximately two weeks later, KCS fired Green for allegedly falsifying his time sheet, a basis which Green disputes.  KCS claims Green fraudulently filed a time slip for a date that he did not work or sent in more time sheets than days actually worked. Green claims that charges that he "stole" one day's wages and his subsequent firing is merely pretext to cover up KCS' real motive for firing him–for having an injury and for filing an injury claim after a supervisor told him he did not need to file an injury report.

In his suit against KCS, Green seeks relief under the Federal Employment Labor Act ("FELA"), 45 U.S.C. § 51, *et seq.*, for the negligence of Dr. Till related to Green's ear injury (the "negligence claim").  Green also claims that KCS falsely accused him of fraud, thereby inflicting emotional distress upon him which resulted in further anguish and emotional distress associated with his job (the "emotional distress claims").  Further, Green claims KCS fired him in retaliation for making a FELA claim or, alternatively, that KCS fired him because of the injury itself (the "discharge claims").  Alternatively, Green alleges state-law claims that KCS fired him in retaliation for filing his injury claim with KCS, in violation of Texas V.T.C.A., Labor § 451.001[1] ("Texas retaliation statute"), L.S.A. – R.S. 23:1361[2] ("Louisiana retaliation statute"), Texas and/or Louisiana public policy, and the implied covenant of good faith and fair dealing.

Green moved for summary judgment, arguing: (1)  Dr. Till acted as KCS's agent, and (2) Dr.

---

[1] TEXAS LABOR CODE § 451.001.  Discrimination Against Employees Prohibited
A person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith.

[2] LSA – R.S. 23:1361. Unlawful discrimination prohibited.
B.  No person shall discharge an employee from employment because of said employee having asserted a claim for [worker's compensation] benefits under the provisions of this Chapter or under the law of any state or of the United States.

Till acted negligently in perforating Green's eardrum and that negligence caused Green's injuries. KCS, likewise, moved for summary judgment, arguing: (1) Green's claims for negligent and intentional emotional distress fail as a matter of law, (2) the retaliatory discharge claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, (3) alternatively, the state-law workers' compensation retaliation claims do not apply to FELA plaintiffs such as Green, and (4) alternatively, there is no evidence to support a retaliatory discharge claim because the individuals who were involved in the termination decision had no knowledge of Green's injury claim.

At a hearing held on July 3, 2006, the Court granted KCS's motion as to the emotional distress claims, finding no outrageous and extreme conduct on the part of KCS.  The Court took the remaining issues under advisement.  After careful consideration, and as will be discussed below, the Court hereby GRANTS Plaintiff's motion (Doc. No. 43) as to agency, but DENIES Plaintiff's motion as to negligence.  Further, the Court GRANTS in part and DENIES in part KCS's motions (Doc. Nos. 45 and 71), dismissing Green's emotional distress claims, but finding Green's discharge claims are not preempted by the RLA.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment, the movant, "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (an banc) (quoting *Celotex*, 477 U.S. at 323-25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Merritt-*

4

*Campbell, Inc.*, 164 F.3d at 961.  However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-51; *Texas Instruments*, 100 F.3d at 1179.

## APPLICABLE LAW

### The discharge claims and preemption by the RLA

KCS first moves the Court for summary judgment on the ground that FELA does not provide a private cause of action for retaliatory discharge and that Green's sole remedy as an FELA employee is limited to arbitration under the RLA.  45 U.S.C. § 151, *et seq.*  KCS also moves for summary judgment on Green's state law claims.

Congress enacted the Railway Labor Act of 1926 ("RLA") in order "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994).  The RLA differentiates between "major" and "minor" disputes arising under a CBA, prescribing different procedures for dispute resolution depending under the nature of the dispute involved.  *See, e.g., Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-28 (1945); *Int'l Bhd. of Teamsters, etc. Local 19 v. Sw. Airlines Co.*, 875 F.2d 1129, 1133 (5th Cir. 1989) (en banc).  A dispute's status as "major" or "minor" is not predicated on the importance of the dispute itself; rather, "the terms refer to the bargaining context in which a dispute arises."  *Sw. Airlines*, 875 F.2d at 1133 (citing *Burley*, 325 U.S. at 723). Generally, "major" disputes seek to create contractual rights, whereas "minor" disputes seek to

5

enforce them. *Burley*, 325 U.S. at 723. As stated by the Supreme Court in *Burley*:

> [major disputes] arise where there is no [collective bargaining] agreement or where [the parties seek] to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

*Id.*

In contrast, "minor" disputes result from grievances over the interpretation or application of particular provision of existing collective bargaining agreements covering rates of pay, rules, or working conditions. *See Hawaiian Airlines*, 512 U.S. at 253; *Burley*, 325 U.S. at 723, *Sw. Airlines*, 875 F.2d at 1133. In essence, minor disputes refer to "disagreements over how to give effect to the bargained-for agreement." *Hawaiian Airlines*, 512 U.S. at 254. Generally, all disputes growing out of "grievances" or out of the interpretation of application of a CBA are preempted by the RLA's mandatory arbitration provisions. 45 U.S.C. § 151a. Thus, the language of § 151a limits the RLA's preemption of claims to those involving the interpretation or application of a CBA. *Hawaiian Airlines*, 512 U.S. at 262-63.

KCS argues that Green's claims involve interpretation of the CBA in at least four respects:

1.     Green claims that he was "forced" into engine service too soon in violation of KCS violation of KCS policy and the CBA.

2.     Green was fired for "trying to steal one day's wages," which KCS contends is grounds for dismissal under the CBA.

3.     Green's termination allegation somehow relates to his prior time claims that he made pursuant to the CBA.

4.     Green complains of the factual sufficiency and procedures utilized in the formal investigation conducted pursuant to the CBA.

In support of its motion, KCS refers to *Mayon v. Southern Pacific Transportation Co.*, 805

F.2d 1250 (5th Cir. 1986).  In *Mayon*, the Fifth Circuit held that FELA provides no private cause of action for retaliatory discharge and that the plaintiff's sole remedy for his claim was under the RLA. 805 F.2d at 1253.

However, the very next year, the United States Supreme Court addressed the issue and stated, "[t]he fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 564 (1987).  The *Buell* Court further opined that, "[t]his Court has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration, barred from bringing claims under federal statutes." *Id.* at 564-65 (citations omitted).  The Court concluded that, "[i]t is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion." *Id.* at 565.

In this case, Green argues that his case is distinguishable from *Mayon* and akin to *Buell* because he alleges that KCS negligently injured him and then fired him because of that injury, which Green argues, is a cognizable action under FELA as recognized in *White v. Kansas City Southern Railway Co.*, 2001 WL 736757 (E.D. La. June 27, 2001).  In *White*, the plaintiff alleged retaliatory discharge for having an accident and sustaining injuries, much like Plaintiff's claim here.  *Id.*, at *2. There, the plaintiff alleged he received injuries because of an unsafe working condition allegedly condoned by the railroad.  *Id.*  The *White* court held, under *Buell*, that plaintiff White's claim for emotional damages which may be related to unsafe working conditions was not preempted by the RLA.  *Id.*  Because Plaintiff was not seeking reinstatement or back pay for violation of the CBA, but

7

only for such damages as are normally awarded in a personal injury action, i.e., physical pain and suffering, mental anguish and anxiety, loss of wages and benefits in the past and loss of earning capacity in the future, sustained as a result of the alleged negligence of the employer in causing his injury, the *White* court found that the plaintiff's case was a factual inquiry that did not involve an interpretation of the CBA and thus his damage claims for wrongful discharge due to his accident and injury under the FELA were not preempted by the RLA. *Id.*, at *3.

Green contends, like *White*, that his case turns upon a factual inquiry as to whether KCS fired him because he was injured. Green argues that this case is about the motives of KCS in having an unwritten, unspoken practice of using any excuse to fire someone that they do not want to keep, and this includes persons that are injured or file accident reports. The Court agrees with Green that it is not a question of interpretation of the CBA because the CBA does not address the existence of the right or the procedure for KCS to terminate an employee for filing an injury report. Green does not attack any provision of the CBA, and he does not seek reinstatement to his former position. In contrast to KCS's position, nothing in Green's claim compels or asks the Court to look at an interpretation, rule, term or condition of the CBA. Further, when presenting summary judgment evidence, KCS has not provided a copy of the CBA to the Court nor shown which provisions require interpretation that easily resolve Green's claim. Accordingly, the court will not relegate this claim to that of a "minor dispute" that must be subjected to the mandatory administrative provisions of the RLA.

Neither does the Court find Green's state law claims to be preempted. In *Andrews v. Louisville & N.R. Co.*, 406 U.S. 320 (1972), a railroad employee challenged his employer's decision not to restore him to his regular duties after being injured in a car accident. *Andrews*, 406 U.S. at

321.  The employee sued the employer for wrongful discharge, but the only basis for claiming that

he should not have been discharged was his allegation that the action violated the terms of the CBA.

*Id.*  Later, when the United States Supreme Court examined the issue of preemption by the RLA of

state-law claims in *Hawaiian Airlines v. Norris*, 512 U.S. 246 (1994), the Court noted that "a state-

law claim of wrongful termination was pre-empted [by the *Andrews* court], not because the RLA

broadly pre-empts state-law claims based on discharge or discipline," but because the employee

conceded that the only source of his right to be reinstated after such an injury was the CBA.  *Id.* at

257-258.

In examining the standard for preemption in Labor Management Relations Act ("LMRA")

cases as set forth in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), for adoption in

RLA cases, the Court opined:

> [W]hile there may be instances in which the National Labor Relations Act pre-empts
> state law on the basis of the subject matter of the law in question, § 301 pre-emption
> merely ensures that federal law will be the basis for interpreting collective-bargaining
> agreements, and says nothing about the substantive rights a State may provide to
> workers when adjudication of those rights does not depend upon the interpretation
> of such agreements.   In other words, even if dispute resolution pursuant to a
> collective-bargaining agreement, on the one hand, and state law, on the other, would
> require addressing precisely the same set of facts, as long as the state-law claim can
> be resolved without interpreting the agreement itself, the claim is 'independent' of
> the agreement for § 301 pre-emption purposes."

*Hawaiian Airlines*, 512 U.S. at 262 (quoting *Lingle*, 486 U.S. 399, 408-10 (1988)).  The Court held

that the RLA does not preempt state law remedies for retaliatory discharge when adjudication of the

plaintiff's retaliatory discharge claim "require[s] only the purely factual inquiry into any retaliatory

motive of the employer," and does not depend on an interpretation of a CBA.  *Hawaiian Airlines*,

512 U.S. at 252, 266; *see also Hirras v. Nat'l R.R. Passenger Corp.*, 44 F.3d 278, 282 (5th Cir.

9

1995).

Further, the Supreme Court noted that claims involving only factual questions "about an employee's conduct or an employer's conduct and motives" do not require an interpretation of the CBA. *Hawaiian Airlines*, 512 U.S. at 252, 266.  Or as the *White* court had instructed, "[under *Hawaiian Airlines*], a state law retaliatory discharge claim is not preempted by the RLA if resolution of the state law turns on purely factual questions, such as whether the employee was discharged or threatened was discharged and, if so, whether the employer's motive in such action was to deter the employee from exercising his rights under state law, and if the state law claim is not dependent upon an interpretation of the CBA."  *White*, 2001 WL 736757, at * 2-3 (E.D. La. June 27, 2001) (citing *Hawaiian Airlines*, 512 U.S. at 261-62)).

Applying *Hawaiian Airlines* and its progeny, the question before this Court is whether Green's right not to be discharged wrongfully is wrapped up solely in the CBA or is a factual inquiry that does not require interpretation of the CBA.  In *Anderson v. American Airlines*, 2 F.3d 590, 592 (5th Cir. 1993), the Fifth Circuit acknowledged that the Texas Workers' Compensation Act protects workers from retaliation for filing a workers' compensation claim.  As the Fifth Circuit stated, "[a]n important component of this scheme is the statute that prohibits retaliation against employees who file workers' compensation claims in good faith."  *Anderson*, 2 F.3d at 592.  In *Anderson*, the Fifth Circuit held that the RLA did not preempt the plaintiff's state-law retaliatory discharge claims because, although the CBA governed the terms and conditions of the plaintiff's employment, the CBA did not expressly prohibit retaliation for filing a workers' compensation claim.  *Id.*

Discussing the workers' compensation claim, the *Anderson* court cited to *Jones v. Roadway Express, Inc.*, 931 F.2d 1085 (5th Cir. 1991), where Judge Wiener concluded that "[r]esolution of

10

this issue does not require an interpretation of the CBA." *Id.* at 596 (quoting *Jones*, 931 F.2d at 1090). While the *Jones* court noted that "either party may still use the CBA to support the credibility of its claims," the court noted that such reliance does not show that an interpretation of the CBA is necessary to resolve the claim. *Id.* The court continued that, although the defendant could defend against the plaintiff's workers' compensation claim by arguing that its actions were justified by the CBA and its rules, such reliance did not necessarily transform that into a claim that required an interpretation of the CBA. *Id.* at 596-97.

Such is the case here. Unlike *Andrews*, Green does not attack any provision of the CBA and nothing in Green's claim compels or asks the Court to look at an interpretation, rule, term or condition of the CBA. Rather, Green argues that KCS wrongfully terminated him because he was injured or filed an accident report. As stated earlier, the state law claims do not involve interpretation of the CBA because the CBA does not address the existence or not of the right or procedure for KCS to terminate a man for filing an injury report. The inquiry involves a purely factual dispute regarding the motives of KCS in terminating Green. Like *Jones*, although KCS might defend against the plaintiff's workers' compensation claim by arguing that its action was justified by the CBA and its rules, such reliance does not necessarily transform that into a claim that requires an interpretation of the CBA Thus, at this juncture, Green's state law discharge claims remain before this Court, and the Court denies KCS's motion for summary judgment.

**The negligence claims**

Plaintiff also seeks summary judgment on the grounds (1) that Dr. Till was at all material times an agent of KCS, for which KCS is liable under the doctrine of *respondeat superior*; and (2) that Dr. Till was negligent, and his negligence contributed to cause, in whole or in part, Green's

ruptured left tympanic eardrum.

FELA provides that "every common carrier by railroad" engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce" where the injury arises from the negligence of the railroad's officers, agents, or employees. 45 U.S.C. § 51. To prevail under FELA, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence. *Fowler v. Seaboard Coastline R.R. Co.*, 638 F.2d 17, 19 (5th Cir. Unit B Feb. 1981) (citing 45 U.S.C. § 51). KCS argues that Green fails to satisfy the third and fourth elements.

The third element requires proof that the plaintiff was injured in the scope of his employment. *Smith v. Medical & Surgical Clinic Ass'n*, 118 F.3d 416 (5th Cir. 1997). FELA's "scope of employment" requirement has been interpreted broadly and is not limited to acts required or coerced by the employer. *Id.* Rather, the scope of employment encompasses "acts incidental to the employment as well as the actual work." *Fowler*, 638 F.2d at 20. In this Circuit, "the proper test for scope of employment in a FELA case is whether the act was one which the employer might reasonably have foreseen and which the employee might reasonably have thought necessary in the interest of or in the benefit of the employer. *Id.* at 20 (citing *Texas & Pac. Ry. v. Jones*, 298 F.2d 188 (5th Cir. 1962)).

By contrast, purely private activity totally unrelated to the employment is not within the scope of employment. *Id.* at 20. Stated differently, FELA "cannot be extended to cover activities not necessarily incident to or an integral part of employment in interstate commerce. It obviously does

12

not cover activities undertaken by an employee for a private purpose and having no causal relationship with his employment." *Id.* (quotation omitted).  The question before the Court, then, is whether Green's ear exam and the ensuing injury bore some "causal relationship" to Green's employment or was "a purely private activity totally unrelated to the employment" for Green's benefit. *Id.*

It is undisputed that KCS required Green to undergo an examination on November 8, 2004 with Dr. Till.  It is not disputed that Dr. Till was hired by KCS, paid by KCS, and performed the exam for KCS.  What is disputed is whether the examination and subsequent procedure was for KCS's benefit and whether it was done in the course and scope of Green's employment.

In *Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326 (1958), the Supreme Court held that the railroad was liable for the negligent acts of a switching company working on its property. The Court held that the railroad was liable even though it did not control the activity of the switching company because it furthered the operational activities of the railroad.  *Sinkler*, 356 U.S. at 331. Court decisions following *Sinkler* have required that the purported agent's work be of a type that was "required" or "necessary" for the railroad to perform its operational tasks.  *See, e.g., Hamilton, Roberts, Williams*.  The operational activity must be a "necessary function" of the railroad's business.  *Hamilton v. Seariver Mar., Inc.*, WL 133335, at *3 (E.D. La. 1995) (citation omitted).

The Court has little trouble finding that the hearing exam performed by Dr. Till was for the benefit of KCS.  The summary judgment evidence shows that KCS trains its engineers pursuant to an Engineer Certification Program submitted to and approved by the Federal Railroad Administration ("FRA") pursuant to 49 C.F.R. Part 240.  As part of the engineer training course, each trainee must have their hearing and eye sight tested to make certain that they meet the minimum

13

qualifications established by the FRA.  The Court finds this to be a function that is necessary and that furthers the operational activities of KCS.  Further, in his deposition testimony, Dr. Till stated that KCS sent Green for an ear and eye exam as part of KCS' "yearly surveillance."  He testified that this was part of normal railroading activities.  On the other hand, Green testified that the procedure benefitted only KCS because he did not want to become an engineer, did not have the time and experience required by the company to become an engineer, and told the company he did not want to be "forced" to become an engineer.

KCS concedes that Green was on duty when he went for the exam; however, KCS argues that Green was not on duty when the exam went beyond the scope of the required physical and Green authorized Dr. Till to take the added step of removing the impaction from his ear.  Similarly, KCS argues that Dr. Till was not acting as an agent of KCS when he deviated from the employee physical and began a separate procedure to clear wax from Green's ear that was solely for Green's benefit.  According to KCS, it directed Green to see Dr. Till for the limited purpose of performing an exam to determine if Green qualified to be an engineer under the applicable Federal Railroad Administration ("FRA") rules.  KCS argues that this involved only the performance of a hearing and eye test and not for a general exam or the performance of any invasive medical procedure.  At the very least, KCS argues that there is a genuine issue of material fact that Dr. Till acted as KCS's agent when he performed a procedure that was not necessary or required for KCS's operational activities.

To the contrary, the summary judgment evidence shows that Dr. Till was an agent of KCS and was acting in the course and scope of his agency at the time he performed the cerumen removal on Green.  Dr. Till testified at his deposition that he sees hundreds of KCS employees a year for physical examinations.  He estimated that his clinic sees 40 to 60 KCS employees a month.  He

14

stated that he has cleaned ear wax out of maybe three to four percent, maybe 150 employees, a year. He testified that he initially had to call KCS and ask for permission to clean the ear wax out. He stated that it then became the policy for him to remove the cerumen at his office rather than refer the KCS patient elsewhere.

Dr. Till testified that he determines whether to remove cerumen prior to performing an audiogram. He stated that if there is any patency, meaning he can see the membrane, then he will not clean out the ear wax. He stated that he only cleans out the ear wax when the membrane is completely obliterated. Dr. Till testified that KCS had previously viewed his clinic and equipment and knew how he performed his exams from looking at the equipment and talking with him. Dr. Till testified that he performed on Green what he would have done for any other KCS employee. He testified that he charges an extra $20 an ear, not to the employee, but to KCS, to clean out the ear wax.

Alternatively, KCS argues that a fact issue exists as to whether or not Dr. Till performed a procedure that benefitted KCS because such cleaning was not needed for FRA certification. The FRA requires that the person not have an average hearing loss in the better ear greater than 40 dB at specified frequencies. 49 C.F.R. § 240.121(d). As long as an engineer candidate has adequate hearing in his good ear, then the candidate passes the test. According to KCS, Dr. Till exceeded the scope of his agency when he performed a medical procedure in one ear after having determined that Green passed the test in the other ear. In other words, once Dr. Till obtained a passing score from Green's good ear, it was unnecessary to continue testing the other ear and to remove an impaction to continue testing on Green's bad ear was unnecessary.

However, the summary judgment evidence shows otherwise. Dr. Till testified that he does

not pass or fail a patient on a hearing test and he is not required to know what the audiogram shows.

He testified that he is merely a tester that passes the information along to KFC and does not make

any determinations. Though KCS provides an affidavit that states Green passed the test, Dr. Till

testified that the determination of whether the employee passed was made by KCS.  In light of these

facts, the Court finds that Dr. Till's actions in performing the cerumen removal were authorized by

KCS for the benefit of KCS, so that Dr. Till acted as the agent of KCS.

Having found that Dr. Till acted as an agent of KCS when performing the ear cleaning

procedure, the Court agrees with KCS that there is a genuine issue of material fact as to whether or

not Dr. Till performed the task negligently. Both Green and KCS have submitted affidavits from

different medical experts that opine that Dr. Till was either negligent or was not negligent in the

performance of his duties.  Because this issue boils down to competing experts, the Court finds a fact

issue exists that precludes the grant of summary judgment as to Green's negligence claims.

## CONCLUSION

After reviewing the pleadings, the relevant case law, and the arguments of counsel at the

hearing, the Court GRANTS Plaintiff's motion (Doc. No. 43) as to agency, but DENIES Plaintiff's

motion as to negligence.  Further, the Court GRANTS in part and DENIES in part KCS's motions

(Doc. Nos. 45 and 71), dismissing Green's emotional distress claims, but finding Green's discharge

claims are not preempted by the RLA.

**So ORDERED and SIGNED this 31st day of October, 2006.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

16